**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Matthew Oskowis, | No. CV-17-08215-PCT-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Arizona Department of Education, *et al.*, | |
| Defendants. | |

At issue is the denial of *pro se* Plaintiff Matthew Oskowis's Due Process Complaints by an Administrative Law Judge ("ALJ") under the Individuals with Disabilities Education Act ("IDEA"). Since 2010, Plaintiff has filed several due process complaints against Sedona-Oak Creek Unified School District #9 ("Sedona-Oak Creek"). Three of those complaints are at issue here.[1] Plaintiff filed a Complaint (Doc. 1, "Compl.") seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 58, "Pl. Br."), Defendant Sedona-Oak Creek's Response (Doc. 59, "Def. Br."), and Plaintiff's Reply (Doc. 60, "Reply"). The Court has reviewed the briefs and the Administrative Record and now affirms the ALJ's decision ("ALJ Dec.").

**I.    BACKGROUND**

Plaintiff raises a claim against Sedona-Oak Creek on behalf of himself and his minor child, E.O. ("Student"), to appeal an administrative decision under IDEA, 20 U.S.C. § 1415(i)(2). Plaintiff alleges that by allowing a paraprofessional to provide the special

---
[1] Nos. 16C-DP-057-ADE, 16C-DP-061-ADE, 16C-DP-062-ADE.

education service minutes identified in Student's 2013–2014, 2014–2015, and 2015–2016 Individualized Education Programs ("IEPs"), Sedona-Oak Creek failed to provide Student with a Free Appropriate Public Education ("FAPE"), as required by IDEA.

In May 2016, Plaintiff filed three Due Process Complaints with the Arizona Department of Education, Exceptional Student Services, Dispute Resolution Unit. (Pl. Br. at 1.) On June 15, 2016, the ALJ granted Sedona-Oak Creek's unopposed motion to consolidate Plaintiff's three Due Process Complaints and determined they presented a single legal issue: whether special education service minutes identified in an IEP may be provided by someone other than the special education teacher. (ALJ Dec. at 1–2.) The parties submitted written briefings, and on September 21, 2017, the ALJ denied Plaintiff's claim. (ALJ Dec. at 12.) The present appeal followed.

Plaintiff raises 13 issues in his Opening Brief, the majority of which can be boiled down to three: (1) the ALJ erred by failing to render a decision within IDEA's 75-day procedural safeguard; (2) the ALJ misinterpreted the law governing paraprofessionals; and (3) the ALJ erred by determining that Student's 2013–2014, 2014–2015, and 2015–2016 IEPs permitted a paraprofessional to provide special education service minutes.[2] (Pl. Br. at 2–4.)

During the relevant period, Student attended school in Sedona-Oak Creek. (ALJ Dec. at 3.) He is eligible for special education based on autism, a moderate intellectual disability, and a speech language impairment. (ALJ Dec. at 3.) As required by IDEA, Sedona-Oak Creek annually developed and implemented an IEP for Student. Each IEP contains multiple forms that describe Student's special education needs, goals,

---

[2] Plaintiff also alleges the ALJ erred by finding that his Due Process Complaints raised a single legal issue that could be resolved without further proceedings. (Pl. Br. at 4.) Relatedly, Plaintiff alleges the ALJ oversimplified Plaintiff's Complaints. (Pl. Br. at 3–4.) However, other than simply raising these as issues, Plaintiff does nothing to argue or substantiate them in his briefs. The Court concludes the ALJ properly treated Plaintiff's claims as a single legal issue because Sedona-Oak Creek conceded that a paraprofessional provided special education service minutes. Thus, there were no unresolved factual disputes. Further, the Court finds that the ALJ did not oversimplify Plaintiff's Complaints, and Plaintiff does not provide argument to the contrary.

performance objectives, and progress. Two forms are particularly relevant to Plaintiff's claims. Form I (Services and Environment) contains three separate charts for special education services, related services, and supplemental services, along with the setting, location, frequency, and provider of those services. Form I also includes clarifying information about the services and providers. The other relevant form is a narrative progress report for each skill area in which Plaintiff requires special education services (titled "Student Goals and Performance Objectives Progress Report"). Each skill area includes goals and service providers.

Student's 2013–2014 IEP identifies seven areas in which he required special education services. (Reply, Ex. B at 56.) Form I lists the special education teacher and paraprofessional as the providers of special education services and indicates the paraprofessional would spend 1200 minutes per week with Student in the special education classroom. (Reply, Ex. B at 29.)

Student's 2014–2015 IEP identifies four areas in which he required special education services. (Reply, Ex. C at 79.) Form I lists the special education teacher as the provider of special education services and indicates the paraprofessional would spend 1200 minutes per week and a majority of each day with Student in the special education classroom. (Reply, Ex. C at 79.)

Student's 2015–2016 IEP identifies four areas in which he required special education services. (Reply, Ex. D at 106.) Form I lists the special education teacher as the provider of special education services and indicates the paraprofessional would spend 1200 minutes per week and a majority of each day with Student in the special education classroom. (Reply, Ex. D at 106.) The progress report identifies the special education teacher and paraprofessional as the service providers. (Reply, Ex. D at 94–102.)

On September 15, 2015, Sedona-Oak Creek held a meeting to create Student's 2015–2016 IEP. (ALJ Dec. at 4.) Plaintiff alleges that during the meeting, Student's special education teacher stated she would provide Student with 1080 minutes of special education services per week. (Pl. Br. at 5.) Plaintiff claims he understood this to mean the special

education teacher, rather than a paraprofessional, would provide those minutes herself. (Pl. Br. at 6.) In his briefs to the ALJ, Plaintiff argued the September 2015 meeting clarified his expectations regarding Student's 2013–2014, 2014–2015, and 2015–2016 IEPs and meant that Student had not been receiving the full number of service minutes identified in his IEPs. (ALJ Dec. at 5.) The ALJ noted the September 2015 meeting reflected a change in the parties' understanding about who would provide special education services, but it did not amend Student's IEPs or change the fact that a paraprofessional could provide special education service minutes. (ALJ Dec. at 12.) On November 20, 2019, Plaintiff moved the Court to supplement the record with a digital recording of the September 2015 meeting. (Doc. 53.) The Court denied Plaintiff's motion as untimely. (Doc. 57.)

## II.     LEGAL STANDARD

Under IDEA, any aggrieved party may bring a civil action in federal district court after receiving the final decision of an ALJ. 20 U.S.C. § 1415(i)(2)(A). The moving party bears the burden of proving the ALJ's decision was not supported by a preponderance of the evidence. *L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 908–10 (9th Cir. 2008). The district court "shall receive the records of the administrative proceedings," "shall hear additional evidence at the request of a party," and "basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C).

In a judicial proceeding under IDEA, a reviewing court is required to conduct a modified *de novo* review. *M.L. v. Fed. Way Sch. Dist.*, 341 F.3d 1052, 1061 (9th Cir. 2003). The Court reviews *de novo* the question of whether a school district's proposed IEP provided a FAPE under IDEA, but reviews the findings of fact only for clear error. *Timothy O. v. Paso Robles Unified Sch. Dist.*, No. 14–55800, 2016 WL 2957215, at *9 (9th Cir. May 23, 2016). Courts must not "substitute their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982). However, it is a matter of district court discretion to decide the degree of deference to give in the ALJ's determination. *Ojai*

*Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1474 (9th Cir. 1993). When reviewing the administrative record as a whole, courts must give "due weight" to administrative bodies, a standard that is less deferential than judicial review of other agencies. *Timothy O.*, 822 F.3d at 1118 (internal citation omitted).

## III. ANALYSIS

### A. The ALJ's violation of IDEA's 75-day rule did not result in a denial of special education services for Student.

Plaintiff argues the ALJ denied Student a FAPE by failing to render a decision within IDEA's 75-day procedural safeguard. (Pl. Br. at 10–12.) According to statute, a complaining party must receive a final written decision from a due process hearing within 45 days of the expiration of a 30-day resolution period, or in other words, within 75 days of the filing of the due process complaint. 34 C.F.R. §§ 300.510(b)–(c), 300.515(a). However, the issuance of a final decision beyond the required deadline, alone, is not a *per se* denial of a FAPE. *Oskowis v. Sedona-Oak Creek Unif. Sch. Dist.*, No. CV-14-08166-PCT-JAT, 2016 WL 1118038, at *9 (D. Ariz. Mar. 22, 2016) (citation omitted). This Court only grants relief if the "procedural error either resulted in a loss of educational opportunity or significantly restricted parental participation." *Capistrano*, 556 F.3d at 910 (citation omitted).

Here, the ALJ's decision was untimely under the statute, but Plaintiff does not show the delay resulted in a denial of special education services or significantly restricted parental participation in the development of successive IEPs. Student continued to receive special education service minutes, as reflected in his 2016–2017 and 2017–2018 IEPs. (Reply, Ex. E & F.) Plaintiff argues the determination of whether a paraprofessional can provide special education service minutes was critical to the development of future IEPs, including those from 2016, 2017, and 2018. (Pl. Br. at 11.) While that could be true, the ALJ correctly determined a paraprofessional may legally provide special education service minutes when working under the direct supervision of a teacher, as discussed below. *See infra* Section B. Therefore, the ALJ's delay in rendering a decision did not result in a denial

of a FAPE because a paraprofessional was legally permitted to provide the special education services identified in the IEPs that were created pending the ALJ's decision.

### B. A paraprofessional may provide the special education service minutes identified in an IEP when directly supervised by a teacher.

Plaintiff next argues the ALJ misinterpreted the applicable statutes and regulations governing paraprofessionals. (Pl. Br. at 8–10.) The ALJ considered the No Child Left Behind Act ("NCLB") and 34 C.F.R. § 200.59 and found that a paraprofessional is permitted to provide special education service minutes when working under the direct supervision of a teacher. (ALJ Dec. at 9–11.) The Court reviews this legal question *de novo* and finds that the ALJ correctly interpreted the applicable laws and regulations.

NCLB, which was in effect when Student's 2013–2014, 2014–2015, and 2015–2016 IEPs were created, states that a paraprofessional may provide instructional services if she is working under the direct supervision of a teacher. NCLB, Pub. L. No. 107-110, § 1119(g)(2)(G), (g)(3)(A). Similarly, 34 C.F.R. § 200.59 provides that a paraprofessional may provide instructional support services to a student if she is working under the direct supervision of a qualified teacher. 34 C.F.R. § 200.59(b)–(c). A paraprofessional works under the direct supervision of a qualified teacher if: (1) the teacher plans the activities that the paraprofessional implements; (2) the teacher evaluates the student's achievement; and (3) the paraprofessional works with the student in close proximity to the teacher. 34 C.F.R. § 200.59(c).

Plaintiff argues the ALJ erred in interpreting the above statutes and regulations because they do not expressly permit a paraprofessional to provide "direct" or "actual" instruction.[3] (Pl. Br. at 2.) Instead, Plaintiff argues that paraprofessionals may only provide "supplemental" services. (Pl. Br. at 9.) The Court is not persuaded. Plaintiff's arguments appear to rely on his own interpretation of the law. He cites no legal authority that a paraprofessional is limited to providing "supplemental" services. Nor do NCLB or 34

---

[3] Plaintiff argues the ALJ ignored the congressional intent behind 34 C.F.R. § 200.59 "to safeguard against the improper use of paraprofessionals to provide actual instruction." (Pl. Br. at 10.)

- 6 -

C.F.R. § 200.59 limit a paraprofessional in that way, as Plaintiff alleges. Instead, NCLB and 34 C.F.R. § 200.59 allow for a paraprofessional to provide instruction, including special education services, when working under the direct supervision of a teacher.

In this case, the paraprofessional provided instructional services to Student as contemplated by NCLB and 34 C.F.R. § 200.59. Judge Lanza, of this district, determined this issue in a related matter involving the same IEPs at issue here, and the Court will not address it further.[4] *See Oskowis v. Sedona-Oak Creek Unified School District #9*, No. CV-17-08070-PCT-DWL, Doc. 77. In sum, the Court finds that the ALJ properly determined that a paraprofessional may legally provide special education service minutes.

### C. Student's 2013–2014, 2014–2015, and 2015–2016 IEPs allowed a paraprofessional to provide special education service minutes.

Notwithstanding the fact that NCLB or 34 C.F.R. § 200.59 allow a paraprofessional to provide special education service minutes, Plaintiff argues that Student's 2013–2014, 2014–2015, and 2015–2016 IEPs, by their terms, coupled with the September 2015 IEP meeting, did not permit a paraprofessional to provide the minutes. (Pl. Br. at 3.) Plaintiff argues the IEPs specifically identified the special education teacher as the provider of the minutes. (Pl. Br. at 3.) Plaintiff further argues the September 2015 IEP meeting clarifies the parties' expectations that the special education teacher would provide the minutes. (Pl. Br. at 3.) The Court reviews this issue *de novo* and determines the ALJ's findings are supported by a preponderance of the evidence.

#### 1. Student's 2013–2014, 2014–2015, and 2015–2016 IEPs

The ALJ found that Student's 2013–2014, 2014–2015, and 2015–2016 IEPs permitted other providers, including paraprofessionals, to provide the identified special education service minutes. (ALJ Dec. at 12.) In making that decision, the ALJ first looked

---

[4] Plaintiff appears to be taking a second bite of the apple by arguing that a paraprofessional may not legally provide special education service minutes. That argument is substantially similar to his previous argument before Judge Lanza that Sedona-Oak Creek's use of a paraprofessional did not meet the requirements of NCLB or 34 C.F.R. § 200.59. The Court cautions Plaintiff against raising issues that have already been adjudicated, as they may be barred from reconsideration and result in an unnecessary and ineffective use of judicial resources.

at Student's IEPs and found multiple forms instructive. For example, as Defendant points out, Form I of Student's 2013–2014, 2014–2015, and 2015–2016 IEPs provide that a paraprofessional would spend 1200 minutes per week with Student in the special education classroom. (Def. Br. at 7.) This reflects that a paraprofessional, working under the direct supervision of a teacher, would provide a substantial portion of Student's special education.

The ALJ was also persuaded by a previous administrative proceeding, in which Plaintiff raised and lost a similar argument. Form I of Student's 2012–2013 IEP listed the occupational therapist ("OT") as the provider of sensory diet services. Based on a strict reading of Form I, Plaintiff argued that only the OT could provide those services. However, the ALJ in that proceeding found that designating the OT as the provider only implied that he or she was responsible for creating, overseeing, and implementing the service, but that other professionals could provide the service. (ALJ Dec. at 12.) Sedona-Oak Creek argued the same logic applies to this case, and the ALJ agreed. (ALJ Dec. at 12.) The ALJ found that where the special education teacher is listed as the provider of a service, she is "responsible for designing the curriculum, directly overseeing its implementation, and actual or *supervised* delivery of instruction." (ALJ Dec. at 12) (emphasis added).

In sum, the ALJ looked at Student's IEPs as complete documents and properly concluded they allowed for a paraprofessional to provide special education service minutes. The ALJ also considered a previous due process complaint in which Plaintiff raised and lost a similar argument and properly concluded paraprofessionals can provide services even when they are not identified as providers. The Court finds that the ALJ's decision is supported by a preponderance of the evidence and therefore affirms it.

### 2. September 2015 IEP Meeting

Plaintiff does not dispute the above findings, but instead argues the ALJ, in concluding that Student's IEPs permitted a paraprofessional to provide special education services, erred by failing to consider the September 2015 IEP meeting. (Pl. Br. at 3.) Plaintiff alleges that during the meeting, the special education teacher stated that she would provide Student with 1080 minutes of instruction per week. (Pl. Br. at 5.) In his Opening

Brief, Plaintiff argues the meeting is instructive because it clarifies his understanding that the teacher, rather than the paraprofessional, would provide those minutes herself. (Pl. Br. at 6.) Plaintiff argues the meeting clarified his expectations for not just the 2015–2016 IEP, but also the 2013–2014 and 2014–2015 IEPs. (Pl. Br. at 6.) In his Reply, Plaintiff foregoes his argument that Student's 2013–2014 and 2014–2015 IEPs prevented a paraprofessional from providing special education service minutes and instead focuses solely on Student's 2015–2016 IEP. He argues that Student's 2015–2016 IEP prevented a paraprofessional from providing special education service minutes because: (1) Form I did not list the paraprofessional as a provider of special education services unlike prior and successive IEPs; and (2) the September 2015 IEP meeting clarified Plaintiff's reasonable understanding of the 2015–2016 IEP. (Reply at 2–7.) The Court is not persuaded by either argument and determines the ALJ's findings were proper.

The Court first notes that the September 2015 IEP meeting is not part of the record. The Court denied Plaintiff's request to admit a digital recording of the meeting because it was untimely by almost one year. Next, the Court finds that the ALJ's decision that the paraprofessional could provide special education service minutes is supported by a preponderance of the evidence, even if the September 2015 meeting was considered. Finally, while the ALJ may have inartfully implied that the parties' intentions or expectations dictate the meaning of Student's 2015–2016 IEP, that does not change the underlying legal principles that prevent the September 2015 meeting from being considered. The Ninth Circuit treats an IEP similar to a contract. *See M.C. v. Antelope Valley Union High Sch. Dist.*, 858 F.3d 1189, 1197 (9th Cir. 2017). Therefore, extrinsic evidence is not admissible to change the IEP's meaning. *See Taylor v. State Farm Mut. Ins. Co.*, 854 P.2d 1134, 1140 (Ariz. 1995).

Perhaps in recognition of the general rule against parol evidence, Plaintiff abandons his argument about Student's 2013–2014 and 2014–2015 IEPs and instead focuses solely on Student's 2015–2016 IEP. Plaintiff claims that the September 2015 meeting is admissible because it clarifies his reasonable understanding that the special education

teacher, alone, would provide the minutes in Student's 2015–2016 IEP. *See Taylor*, 854 P.2d at 1140 (holding that extrinsic evidence is admissible to ascertain the meaning of a contract if the language of the contract is reasonably susceptible to the proffered interpretation). To support his argument, Plaintiff points out that the special education teacher *and* paraprofessional are identified as special education service providers in Form I of Student's prior and successive IEPs. (Pl. Br. at 8.) According to Plaintiff, Sedona-Oak Creek engaged in a "bait-and-switch" when it identified the special education teacher as the sole provider of special education but then used a paraprofessional to implement Student's 2015–2016 IEP without obtaining parental consent. (Pl. Br. at 8.)

The Court is not persuaded. First, Student's 2015–2016 IEP was not the only IEP that left paraprofessional off the express list of special education service providers. Student's 2014–2015 IEP also did not include paraprofessional on the list of providers. Therefore, Plaintiff's claim that Sedona-Oak Creek unilaterally changed Student's IEP in 2015 is unconvincing. Second, as discussed above, though Form I of Student's 2015–2016 IEP does not list the paraprofessional as a service provider of special education services, it does state that the paraprofessional would spend 1200 minutes per week with Student in the special education classroom. Finally, the progress report section of Student's 2015–2016 IEP identifies the paraprofessional as a service provider for many specific skill areas. In sum, Plaintiff's claim that Student's 2015–2016 IEP did not allow for a paraprofessional to provide special education services is not supported by the facts. Accordingly, the Court finds that the language of the 2015–2016 IEP is not reasonably susceptible to Plaintiff's proffered interpretation, and the September 2015 meeting is therefore inadmissible to change its meaning.

Upon review, the Court finds that the ALJ's determination that Student's 2013–2014, 2014–2015, and 2015–2016 IEPs permitted a paraprofessional to provide the special education service minutes is supported by a preponderance of the evidence.

**IT IS THEREFORE ORDERED** affirming the September 21, 2017 decision of the Administrative Law Judge.

1    **IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment
2    accordingly and close this case.

3    Dated this 19th day of June, 2020.

_____
Honorable John J. Tuchi
United States District Judge